United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons coming in any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw a line and give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right, we will begin argument and please be seated. We'll begin argument in number 2359 Alexander v. Carrington Mortgage Services. And Mr. Zavarro, we'd be pleased to hear from you. Thank you, Your Honor. May it please the Court. My name is Hassan Zavarro and I am the attorney for the petitioners. It is an honor to be here today. This is my first in-court appearance since March of 2020 and it is great to be back and I appreciate the Court opening it up for us today. So, Your Honors, this is one of dozens of cases across the country challenging what are called pay-to-pay fees, which are fees assessed by mortgage servicers that are not included in the original mortgages and are charged for borrowers when they wish to pay their mortgages online. In this case, there's a $5 fee. In those cases, and in this case in particular, the mortgage servicer only pays pennies to process these fees online. On the other hand, they charge the borrowers $5 in this particular case and have generated hundreds of thousands, and in this case we allege millions of dollars in profits based on charges that were not in the original debt. Mr. Zavarro, you mentioned that the lender incurred just pennies in charges. Is that actually in the record? Do we have evidence of the actual costs that are incurred by the lenders? Yes, Your Honor. That is at Joint Appendix 7-8, page 3 of our amended complaint. You haven't alleged any kind of a claim with respect to the disparity in the cost versus the revenue generated, right? It's just a broad attack on the legitimacy of the fee based on the statute, right? Below, there was an allegation. It was part of the Maryland Consumer Protection Act claim that this disparity was unfair and deceptive, but really, you're right. The gist of the case just goes to whether they can charge these fees in the first instance. You're limiting your appeal to Count 1? That's right, Your Honor. Count 1, which includes causes of action under the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act. These particular fees have been condemned by the CFPB, the agency that regulates the FDCPA, and also by a bipartisan group of 31 state attorneys general, including the Attorney General of Maryland, who condemned these fees as unlawful and illegal. Does it make a difference that someone can avoid the fee by electing to make payment by mail? Does that make a difference in your view in terms of the statute? In our view, Your Honor, it does not make a difference because the FDCPA, which is incorporated into the Maryland Debt Protection Act, specifically was directed at preventing debt collectors from tacking on such fees. The whole purpose of it was to allow, although creditors themselves under the Fair Debt Collection Practices Act could add these fees when they're engaging in collection, the Congress was particularly concerned about debt collectors and whether or not they, in fact, could add those charges. All I'm asking is, does it make a difference in terms of the statute that someone doesn't have to pay the fee if they don't elect to? No, Your Honor, it does not. This goes specifically to the provision of the Fair Debt Collection Practices Act that was incorporated into the Maryland law. What that statute says, and again, this is consistent with what the CFPB and the Maryland Attorney General have said, is that if that fee is included in the underlying agreement that creates the debt, if it's included there, it's okay to charge it. But what you cannot do is to charge it, is to allow the charge to be agreed to or included in a secondary agreement with the actual debt collector. And here, in this case, that is Carrington. So why the distinction? I mean, in this case in particular, since you're dealing with the original loan service, why does it matter? Why would Congress or any state legislature be concerned about saying, on the one hand, it's okay to have this as part of the original agreement, there's nothing unconscionable or unfair or inequitable about that, but on the other hand, it's not okay to later negotiate for a fee? Well, that's right, because when you're entering into a mortgage, you get to pick your mortgager. You get to choose the agreement that you enter into when you get a mortgage. When your loan is assigned, you have no choice in who the mortgage servicer is, who the debt collector is. So the FDCPA was inherently concerned about what happens when the debt is assigned to a debt collector. And it's been specifically included to include mortgage servicers in this context. Excuse me, Judge Diaz, did you have something? No, go ahead. I was just going to ask, is this, in your view, a negotiated amendment to the original mortgage agreement? Because you have to, because, again, the individual on whom the fee is imposed would have to assent. Does that make it a negotiated fee? It is negotiated, but not negotiated with the lender. And it is not part of the original, because the FDCPA speaks to the original agreement that created the debt. And it is not an amendment to that. It is a separate, standalone agreement with another party. But it's negotiated with the servicer? Exactly. That's what you're saying? Exactly, Your Honor. And not with the lender? Most of the authorities that my friend Judge Bennett relied on were other cases in the Maryland District Court, federal cases. Is there any authority by the Maryland High Court? Yes, Your Honor. So we brought to the court's attention two recent cases, the Chavez 2 case and the Kemp 2 case. And both of these... Really on point? You were asking for a certification, is what I'm getting at, to the Maryland High Court. We did. We did ask for a certification originally. But you were asking for a certification on multiple issues. At that time, had you boiled it down to count one? It was, Your Honor. It only has to count one. That's right. That's right. And what I would say about these two new decisions, the Chavez decision and the Kemp decision, they go to... You're saying they control here? Well, in one respect, Your Honor. They don't control with respect to the substantive provision that was imported from the FDCPA. So they don't control here? Well, they control on another issue, Your Honor, which is that the District Court and Carrington are arguing that when the FDCPA... When the Maryland legislature in 2018 added provisions that said that the FDCPA provision applied here, that the violation of the provision that we are talking about, 1692F, is a violation of the Maryland law. What Carrington and what the District Court argued and held was that it also imported over the definitions from the FDCPA. Because the FDCPA was very clear in that it did not want to govern the conduct of loan servicers except under very narrow circumstances when the loan was transferred in default. We did allege that it was in default, but really, the issue here and what we think is supposed to... Does the Maryland statute say anything about being in default? No, it absolutely does not. It's an irrelevant provision in the Maryland statute. So... With respect to count one. That's right. Does it have anything to do with being in default? That's exactly right, Your Honor, and I think what... Does it? It does not say anything about default. In fact, the big distinction... You're talking there about, let's see, 14201B. Yes, Your Honor, section 14202 governs collectors, and the FDCPA specifically... But 14201B defines a collector. That's right, and it's any person collecting on a debt arising out of a consumer transaction. That's what I was trying to get you to focus... That's the statutory provision that you're dealing with. It is, Your Honor, and Chavez specifically held... And is there any controlling Maryland law from the Maryland High Court dealing with that? Yes, the Chavez 2 case, Your Honor, which specifically says... That's the recent case? That is the recent case. So you don't need any certification? Well, I don't think that we do, Your Honor, because I think Chavez 2 makes it clear... That the Maryland statute is specifically aimed at protecting consumers from anyone engaging in a debt collector. And it says creditors. It specifically says creditors. This includes creditors. It has nothing to do with whether you're a creditor or a debt collector. As I understand it, you think that there's no exception to the statute for someone who services a debt, as opposed to someone who actually goes out and collects it. I mean, I guess that was the import of the Chavez decision. But as I understood your position, you hung your hat on the words, prohibit a later modification, even if the later modification involved a voluntary payment. The key point in time is when the debt was created by the original mortgage document. That's part of your textual argument, is it not? Yes, it is, Your Honor. And then the other part that I was saying, you engage with your opponent in this debate over what the phrase permitted by law means. And permitted could be read to require affirmative permission, or it could be read to require something that was just not prohibited. I mean, that's where the rubber hits the road in terms of this crucial phrase permitted by law. So why don't you give us your best argument for the position that permitted by law requires some sort of express authorization, that it requires sort of a permission slip? Absolutely, Your Honor. That is exactly where the rubber hits the road. And the argument, I think, is best summed up by the CFPB, which we submitted their amicus brief. But it's a statutory, a plain statutory interpretation argument. And there are some contexts when permit can mean not disallowed. But in this context, where you have a prohibition against the collection of debt, and then two exceptions, right? The exception is when it's expressly created by the debt or permitted by the law. If you allow the debt to be collected by some other agreement, by some secondary agreement, you basically made that first provision completely superfluous. And in interpreting statutes... I mean, I thought that was your strongest statutory argument, because if permitted means expressly authorized, then the term expressly authorized earlier in the statute becomes completely unnecessary and superfluous. Yes, Your Honor. That's just as a matter of the statute. Just to me, this whole thing comes down to the text. And I thought that was your strongest textual argument. But at any rate, your time has expired. And I'm going to ask my co-panelists if they have any further questions of you, because if they do, we'll wait for you to answer them. Judge Diaz, do you have any questions you wish to ask? I do not. Thank you, Judge Wilkinson. Judge King, do you have some questions you'd like to ask? I do not. I'm fine. All right. Well, then let's hear... Thank you. You've got some rebuttal time. Thank you, Your Honor. And let's hear from Mr. Levin. Thank you, Your Honor. Frederick Levin, representing Appellee Carrington Mortgage Services, Inc. I wanted to just dive right into some of the questions, Judge Wilkinson, that you asked and respond to them. First, you asked, does the ability to make an agreement, does choice matter? And the answer is it matters quite a bit in this case. It matters to the threshold question of whether Carrington was engaged in debt collection at all, which is a threshold element under the Maryland Consumer Debt Act. But doesn't the Chavez case present an obstacle for you in that regard? Because it says that the application of the statute is not dependent on the method of collection, and that would seem to include those who simply service a debt. No, I think that doesn't read Chavez correctly. The point of Chavez is it eliminated, it reversed a line of cases that distinguished between methods of debt collection versus the validity of the underlying act. It did not rule at all. It didn't even address the question of whether loan servicing is always an act of engaging in debt collection. In fact, the district court here did not rule in a manner consistent with Chavez because it recognized that loan servicing can be debt collection, engaging in debt collection, but that it wasn't here because all that happened here was that the two plaintiffs went online without any prompting from Carrington and used a payment service. There was no debt collection activity here. I'm wondering if you're not asking us to write in an exception to this statute. We sit in on a lot of these consumer protection cases, and I do have to say that Maryland law seems to be about the most protective of any state, and the Maryland decisions plus the statute seem to opt for a fairly broad coverage, and if we try to say, well, this is debt collection, but this is not, or whatever, I think we come close to enacting us an exception for debt servicers from the statute, and I'm not sure the statute allows us to do that. Well, Your Honor, the statute requires as a threshold element that there be engaging in debt collection activity, right? And all we're saying is, in some instances, loan servicers engage in debt collection activity, but in, for example, the case that Judge Bennett cited, the court held that it did not engage in debt collection activity. So we're not asking for an exception. What case was that? A case called Segeti. Is that a Maryland case? It's a Maryland case. Sorry, it was a Maryland district court case, I believe. That's what I was getting at earlier. It seemed like the authorities relied on other decisions of other judges in the Maryland district court, and the state law of Maryland that's authoritative has to be decided by the Maryland courts, indeed the high court of Maryland. And that's what they were, at one point, they were asking for a certification through the Maryland high court. But the decisions that Judge Bennett relied on were not inconsistent with Maryland. But they weren't a precedent. Correct. They were not precedent, controlling precedent. You just said, well, back at one point, I think they mentioned Judge Blake of the Maryland district court. Judge Blake's a wonderful judge. She doesn't sit on the run seat for the court of special appeals or whatever it's called up there. But the issue here is whether Judge Bennett got Maryland law correct on this point. But there's nothing in that statute that says anything about the debt being in default or anything. No, it doesn't say that. In the Maryland statute. I'm talking about the definition of a collector. Right. Nothing there. What it says is that in order for there to be a liability under the statute, there must be engaging in debt collection. And here the point is where there's – There's no exception to coverage written for debt services. And just as an intuitive matter, if somebody is a debt servicer, they're actually collecting. Right. But – They're making a great deal of profit off of this, which is what debt collectors normally do. They don't engage in it just for the heck of it. They engage in it to make a significant profit. And they collect these fees and they derive a profit off the fees. And, you know, there's nothing wrong intrinsically with that. I'm just saying the – I think as best I read the Maryland courts, and I think Judge King makes an important point, that the Maryland courts are critical here and they seem to want – I don't know that I necessarily agree with them, but just as a matter of statutory interpretation, the Maryland courts have seemed to opt for fairly broad coverage. And when you look at this statute, I wonder where it's not – why it's not a fairly straightforward case because it says you can't collect any amount unless the amount is expressly authorized by the agreement. And it's not expressly authorized by the agreement. And is it otherwise permitted by law? I don't see your permission slip. And as I indicated in the previous to your good opposing counsel, if permitted means it has to be expressly authorized or whatever. If permitted means expressly authorized, then there was no need to include expressly authorized in the statute. It renders that term totally superfluous. Well, Your Honor, let me address that because I think that aspect – there's two elements of the FDCPA or actually three elements of the FDCPA with that terms. And let's assume for purposes of argument in light of what the court is saying, that they satisfy the debt collector, the collector element of the Maryland statute. The incorporated federal law has the statute that's in question, Section 8081, which is the incorporated section that they rely on, has three elements that must be satisfied. And the Maryland law very clearly says that what they punish is a violation of that statute. And to violate that statute, one must be a debt collector for purposes of federal law. It's admitted here that Carrington was not a debt collector for purposes of federal law. But how do you deal with the Chavez case, which says that the coverage doesn't turn upon the method of collection? Well, coverage – I think that the Chavez case is saying that it is reversing a line of cases that focused on that. But this is not about the method of collection. This is whether there's a violation of 8081. Well, you said it was a matter of the method of collection because you pointed to the fact that all they are is a debt servicer who doesn't really go out and collect. And your argument with respect to coverage depends on the method of collection. And that's where I think Chavez is not helpful to you. Our argument does not depend on a method of debt collection. Our argument depends on under the – which is the statute that they insist is the relevant key point, is the incorporated federal statute. But the Maryland statute defines the collector. Yes, I am purposes of argument assuming for right now that they are a collector for purposes of Maryland law. However, the Maryland law that incorporates the federal statute – And that doesn't require the debt to be in default. So a debt servicer – It doesn't require – the debt servicer for purposes of – for purposes of this argument, I'm saying it doesn't require just to get to the point about the federal statute. All right? It has three separate elements. The incorporated Maryland law says you have to violate that federal law. All right? To violate that federal law, you must first be a debt collector. Doesn't the statute actually import the conduct, not the actual definitions? No. Well, let me just finish. Without doing – Let me finish. Sorry. Excuse me, Neeraj. That's okay. And I want you to respond to this because it would seem odd, wouldn't it, to have this broad remedial statute and then import conduct and place a limitation that would require the importation of a federal definition of debt collector into a state statute. So how do you get to that? First of all, I get to it from the plain language of the statute, which focuses on a violation of the statute and the legislative history of the Maryland law. To violate the statute has three elements. First, you must be a debt collector as defined by federal law. As you must then – the debt must – the fee in question must also be incidental to the underlying debt. And three, it must either – it cannot fall within the exception expressly created by the debt or permitted by law. And I think there's – Judge Bennett found that each of those elements wasn't present here, and I want to address why that's the case here. But to get to your question about the incorporation, when a legislature borrows a statute, a federal statute to make it state law, it is necessarily bringing with it the defined terms it incorporates. There's Fourth Circuit cases that say that because otherwise – and the statute itself proves that. Why? Because the incorporated statute has three defined terms, debt collector, communication, and consumer, all of which are defined in the federal statute. And the question then is, did the legislature intend for the federal statute to have one meaning when incorporated into Maryland law and a separate meaning standing on its own? No, it was – But collector is defined in the Maryland law. Right, but what that statute says is collectors are subject to the federal law, and federal – It says in this subtitle, the following words have the meanings indicated. And then B, collector, with quotation around it, means a person collecting or attempting to collect an alleged debt arising out of a consumer transaction, and saying about one being in default. I'm not arguing about it being in default. I'm arguing that the – what the legislature – Maryland defines it themselves. That's right, but they also incorporated a statute that uses a specific term, which is an element of the – And you're saying the federal law supersedes it. Is that what you're saying? I'm saying you have to blend the language together, because otherwise you're rewriting the federal law that was incorporated. Judge King is pointing out something that – Maryland is not powerless with respect to this question, and it doesn't – it's not faced with an all or nothing choice that you have to incorporate every dotted I and cross T in federal law, or you can incorporate nothing. They can – Maryland can be judicious, and it can even be selective in what it chooses to borrow from federal law and what it doesn't. And Judge Diaz made an interesting point when he was speaking. He said this is a remedial statute. It's a broadly remedial statute, and the purpose of it was just a fairly construed, I think, to protect people in these situations, including homeowners, including homeowners, from being hit with little fees down the line of which they were given no notice in the mortgage agreement. Now, if we take a broadly remedial statute and say, oh, well, there may be an exception here, and maybe this is not debt collection here, I wonder whether we're not just writing in complexity and exceptions into a statute, and there is a danger here of undercutting what I think are the statute's clear remedial aims. I mean, I don't know whether this is wise policy, because it may force companies and lenders to put in all kinds of fees up front just as a protective measure in order to protect themselves. But whether it's good policy or not doesn't bother me. It's the statute which says that consumers, including homeowners, are to be protected against later surprises. That seems to me what the statute is getting at, and I don't know why we can't give it a generous reading in accordance with its aims. Well, because, Your Honor, and given my time, I want to move on to address the key points at the end. I would just say that we cannot do that without, and we talk about it in our brief, the legislative history, which shows a very conscious decision by the state legislature to focus on the violation of the statute, not conduct prohibited by it. But let me turn to the questions that you addressed earlier with the difference between the provision that says authorized in the agreement creating the debt and permitted by law. Our argument here is that the subsequent contract is permitted by law and that it does not render superfluous the prior section, because a contract that is authorized in the creation of the debt, the legislature is saying the fees authorized there are okay, notwithstanding other law, no matter what other law says here. That does not necessarily mean that subsequent agreements are barred. That's the implication. It's not. The office of that provision is, in effect, provide a safe harbor at the original point of contracting, because otherwise what you're doing is rewriting that statute where it says authorized by the agreement creating the debt or permitted by law. What you're really doing is you're changing the ladder. Very often, in what you term a subsequent agreement, the power dynamic has shifted somewhat and the consumer may be overbarrel and feel that they don't have any... Here they did have a choice, but I'm just... This whole idea of subsequent agreement, I'm not sure that the subsequent agreement doesn't find a good many consumers in a difficult position. Maybe not in this case where they have to consent, but in many cases, they feel they have no choice. That's the point here. We're talking about the facts in this case. The facts in this case is none of the kind of coercion that you're referring to was at issue here. The district court went through. This was an actual consented to agreement where the party chose and had other options. The concerns about oppressive conduct just are not present here. They're not even argued. There was no notice of default, no calls, no threats, no anything. The point is in this instance, there is absolutely no indication that these consumers were in default or were being pressed to pay. This was how they paid day in, month in, month out. That's why it's simply ordinary course servicing, the collection of payments when they're due. Can we go consumer by consumer and ask whether there was coercion or whether the mortgage was in default or whether they knew this previously or what have you? I mean, I don't think- Yes, Your Honor. Yes. Yes, Your Honor. I think that's why there's the exception for permitted by law, which encompasses contract. That is where there's a fact pattern like the convenience fee fact pattern where it is absolutely coercion free. There's no allegation of that. But where there is those things you're concerned about, the ordinary rules of contract law apply. Unconscionability applies. Fraud in the inducement applies. All of the defense- It doesn't say anything about- The statute doesn't say anything about later coercive add-ons. It's almost- It says, no, you cannot impose these additional fees. It doesn't make it dependent on this fact or that fact or whatever. What it makes it dependent upon is whether it's permitted by law. So where's your permission slip? The permission is in the law of the state, which authorizes- You could have agreed to it or this could have been agreed in the mortgage. They say if you mail in your payment, it's going to be this amount. And if you pay it online, it's going to be a different amount that's $5 more. That would be in good shape. Well, this mortgage, these mortgages were written in 2005 and 2009. And the point is what the effect of this is, and I don't think it was an intended effect, was to prevent a company like Carrington from authorizing a new service that wasn't contemplated at the time, wasn't subject to the agreement. It was an agreed upon method of payment. Now a better way comes along, right? And what the implication here is that Carrington must now offer that new and better way for free or not at all. And I don't think the law requires that because it gives the out of permitted by law. And permitted by law is inclusive of a valid contract. And by allowing a valid contract does not limit or render superfluous the earlier mention of contract expressly created in the debt. We know that because in order to get the meaning that it does, you have to change the meaning of the subsequent clause permitted by law, because what you're really saying, the permission slip has to be by statute. Again, your view of permitted by law, it runs into the Second Circuit's total case, which says if state law neither affirmatively permits or expressly prohibits charges, a service charge can be imposed only if the customer expressly agrees to it in the contract. So you've got that total case that is a bar there. And you've also got the federal regulation, 53 federal regulation. There's so many numbers I can't pronounce them when I get to the federal register. But the FTC staff commentary on the FDCPA says that the charge needs to be expressly permitted by state law. Expressly permitted, not just silence or allow. I mean, they're just things that are accumulating against your position. I recognize that. But I would say at the end of the day, it's the statute that counts. And what the commentary does is change the words of the statute. It takes that express that modifies the original contract provision and moves it over to after the or. All I'm saying is the commentary is not helpful. I agree. But when the language is plain, the commentary is irrelevant. And the case, the title case, excuse me, Your Honor. You were relying on legislative history. So, I mean. For a different point, Your Honor. For the point where relating to Maryland law where there's a genuine ambiguity in the statute. Right. But where the statutory language is plain and you have to effectively rewrite the clause after or permitted. Right. To say or permitted by statute. Right. And permission has to be. And law has to mean something other than statutory law. We've let you go for five extra minutes, counsel, because we're very interested in your case. And we're very happy to hear your argument. But at this point, I'm going to ask my friends on the panel if they have some further questions. Have you, Judge King? I do not. Thank you, sir. I don't either. Thank you. Thank you, Your Honor. We thank you, Mr. Levin. Mr. Zavory, you have some rebuttal time, sir. Thank you, Your Honor. So, I want to start by discussing the argument that my friend made that the Maryland statute, when it incorporated and used the word debt collector, that it was inherently engrafting in this definition from the FDCPA. And I think the most important, and if we're going to make an eerie prediction on what the Court of Appeals of Maryland would do, I think the best guidance is in the Nation Star v. Kemp case, where there was an amendment to Maryland's usury law. And there was an argument about what the amendment meant and whether it's substantively changed the provision of the law. The very beginning of that statute says, a clever man once said, a cauliflower is nothing more than a cabbage with a college education. That clever man was Mark Twain. And the decision then goes on to say that a new law that is nothing more than the old law is nothing more than an old law with a college education. And what I would say here, Your Honors, and why that applies here is, and then the decision goes on to say that you can't interpret the new provisions in a way that results in an absurd result, right? And that you have to interpret it consistent with the original provision. You're still dealing with a cabbage, although now it's got a college education. And here, it would be absolutely absurd and would lead to absurd results to have this definition of debt collector. And where the Maryland Court of Appeals has said that applies to servicers and it applies to creditors, right? It applies to both, unlike the FDCPA. That in some provisions, you're going to apply a narrower definition. And in some other provisions, you're going to apply the broader provision that the Maryland legislature actually adopted. But I understand your colleague's argument to be that where the statute actually talks about incorporating violations of federal law into the state statute, that you can't have it – it's not a halfway proposition. The violations include all of the elements of a violation of federal law, including the definition of a debt collector for purposes of that particular subsection. I suppose the state legislature, if it had been more careful, could have simply described the conduct that it intended to incorporate under federal law. But it didn't. It said a violation – certain conduct, which is a violation of federal law, is incorporated here. And your colleague is saying you've got to take the whole thing, including the more narrower definition of what a debt collector is. Well, perhaps, Your Honor, if that statute didn't have its own definition that governed it. But it has its own definition. And to reach the result that my friend advocates for, you would have to basically disregard the definitions and the Court of Appeals of Maryland's pronouncements on what those definitions mean and years of law applying that statute to both creditors and to debt collectors. And there's simply no basis for doing that. And as the Nation Star v. Kemp case determined, that would lead to absurd results. It would be illogical. And it would counter, as Judge Wilkinson said, a broad remedial statute and the purposes of the broad remedial statute. And in particular, the Kemp court also said a particular section of a statute must be construed in a manner consistent with the larger statute's object and scope. And the object and scope of the Maryland Debt Collection Practices Act was specifically to govern creditors and debt collectors. And it would, to accept my friend's interpretation, you would be engaging in and applying a definition that is contrary to the larger statute's object and scope. So that's what I would say with respect to that argument. The other argument that my friend began with was that what the district court, was that the threshold question is whether or not they were engaged in debt collection. And Judge Wilkinson said, well, that goes really to the methods question. And my friend said, no, it does not. Well, I will point out that in their opposition brief at document 29, page 29, Carrington specifically argued that what the district court was doing was an analysis of the methods versus the amount. Quote, the district court recognized that the MCDCA does not make the charging of unauthorized fees, separate fees, separate from collection of a debt, actionable on its own, and called out plaintiff's theory of the case challenging Carrington's authority to charge the convenience fees for what it is, an impermissible attack on the validity of the fees as opposed to a challenge of the method of collection. Well, we now know that that is a distinction without meaning, according to the Court of Appeals of Maryland. And so the idea that somehow the question of whether they were engaging in debt collection governs is based on this distinction between methods and amounts, which we now know no longer holds. And so under Maryland law controlling here, we don't have to make any re-prediction. We know exactly what the Court of Appeals of Maryland would say. Do you know that the Maryland Court of Appeals is not the High Court of Maryland? I'm sorry, it's the Court of Appeals of Maryland, which is the High Court of Maryland. All right. Sorry, I misspoke. The Court of Special Appeals issued one of the decisions, but the Chavez and Kemp case were both decisions of the highest court of Maryland, which is the Court of Appeals of Maryland, Your Honor. Can I ask a question about this Section 808 provision that talks about expressly authorized by the agreement, creating the debt, or permitted by law? Is it your position that expressly authorized modifies both the agreement and permitted by law? No, it is not, Your Honor. It is our argument that by using the expressly permitted in the first clause, that if you take that out, that if you allow something that's not expressly permitted in the second clause, that it would render that meaningless, that applying a permissive standard as opposed to a mandatory standard on the permitted by law provision, that it would render the first piece superfluous. And why is that? Because by saying that it needs to be expressly authorized in the governing contract, if you take that away, then it could mean that, and I'm sorry, I misspoke. If that provision governs and has the force that it's intended to have, then it cannot also be that permitting by law by some non-expressed provision of law could somehow control. It would just render that first piece just meaningless. Well, I mean, expressly authorized by the agreement, the initial contract is a contract signed by the parties, right, the mortgage document. The subsequent agreement is also, if you have an agreement, is also a document signed and authorized by both parties. So what's the difference? Because it's not actually signed by both parties. It's signed by a stranger to the original debt. And that's the point of expressly authorized by the original agreement. The point is to make the emphasis on the original agreement. That's the whole governing principle behind this provision of the FDCPA. It's the notion that at that time they were not concerned about what creditors were going to do. They thought, well, creditors have an existing business relationship with the borrowers, but these debt collectors do not, and the people don't get to choose their debt collectors. So if they agree with their lender and it's expressly included, that's fine, but you can't have a debt collector starting to impose additional fees on top of that. But that's a separate agreement that the borrower has no choice. And I see that my time is up, but if there are no further questions, I thank your court for your attention. Any further questions? Judge King, do you have any further questions? I do not. Thank you, sir. Judge Diaz, do you have further questions? No, thank you very much. Okay. All right. I'd like to thank both of you. We very much appreciate your arguments, and for reasons that we all understand, we can't come down and shake hands and the like, but it doesn't lessen our appreciation for two able arguments one little bit. So thank you very much, and have a pleasant afternoon, and we will head into our next case.
judges: J. Harvie Wilkinson III, Robert B. King, Albert Diaz